Jordan Green (No. 001860)
Lee Stein (No. 012368)
Kevin B. Wein (No. 022752)
**PERKINS COIE BROWN & BAIN P.A.**
2901 N. Central Avenue, Suite 2000
Phoenix, Arizona  85012-2788
Telephone:  602.351.8000
Facsimile:  602.648.7000
Email:  jgreen@perkinscoie.com
          lstein@perkinscoie.com
          kwein@perkinscoie.com

Attorneys for Dr. Richard E. Standridge

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| **IN THE MATTER OF THE SEIZURE OF**<br><br>Contents of Bank of America Account No. 109809146, in the name of Richard E. Standridge, M.D., in the approximate amount of $408,635.40 | No. _____<br><br>**DR. RICHARD E. STANDRIDGE'S EMERGENCY RULE 41(G) MOTION FOR THE RETURN OF SEIZED PROPERTY** |

**Preliminary Statement**

Dr. Richard E. Standridge seeks the return of $397,084.63 unlawfully seized from his bank account ("BOA account") on May 30, 2007.[1]  Standridge is entitled to the return of his property both because (1) the funds were not lawfully seized in the first instance and cannot now be restrained, and separately because (2) the government failed to follow the relevant statutes when it terminated the nonjudicial civil forfeiture action and elected to pursue forfeiture in the criminal case.

Under both the civil forfeiture statute authorizing the initial seizure and the criminal forfeiture statute under which the government is now proceeding, property may only be seized and restrained before trial where the property is connected to a violation of

---

[1] Rule 41(g) of the Federal Rules of Criminal Procedure requires that a motion for the return of property be filed in the District where the property was seized.  Fed. R. Crim. P. 41(g); *Islamic American Relief Agency v. Unidentified FBI Agents*, 394 F. Supp. 2d 34, 47-48 (D.D.C. 2005).  Therefore this Court, and not the Middle District of Florida where the Indictment is pending, is the proper venue for this motion.

1   the law.  These funds have no connection to any alleged crimes.  The funds in the BOA

2   account were tax refunds from the United States government and the State of Arizona for

3   the tax years 2003 and 2005.  Thus, because the last money transfer identified in the

4   Indictment going into an account controlled by Standridge occurred in July 2002, it cannot

5   be suggested that the funds in the BOA account were anything other than substitute assets.

6        The funds in the BOA account were seized pursuant to the civil forfeiture statute,

7   18 U.S.C. § 981.  The government has since terminated the nonjudicial civil forfeiture

8   proceedings and has elected to proceed with a criminal forfeiture of the funds.  Upon

9   termination, the government did not, as it must under the criminal forfeiture statutes

10  (18 U.S.C. § 983 and 21 U.S.C. § 853), obtain either a protective order or a criminal

11  seizure warrant.  Because the government has failed to comply with the procedural

12  requirements of the forfeiture laws, it may not continue to restrain the funds here.

13       Dr. Standridge asks this Court, pursuant to Local Rule 7.2(c), to consider this

14  motion on an expedited basis.  The Court should order a shortened briefing schedule and

15  hold a hearing promptly.  This motion is necessary precisely because of the time

16  sensitivity of the issues involved.  The money that is being unlawfully held by the

17  government is needed to pay living and legal expenses.

18  **Factual Background**

19       On April 12, 2007, Standridge was named in a multi-defendant Indictment alleging

20  conspiracy, mail fraud, wire fraud, and money laundering.  [Ex. A]  The Indictment

21  contends that Standridge (and others) conspired to collect premiums for fraudulent

22  workers compensation insurance coverage.  [*Id.* at p.10 ¶ 1]  The Indictment further

23  maintains that these premiums were then transferred into bank accounts maintained by the

24  co-conspirators.  [*Id.* at p.12 ¶ 10]  The Indictment also seeks forfeiture of property and

25

26

1  proceeds connected to the alleged criminal violations, as well as substitute assets.[2]  [*Id.*
2  beginning at p.48]

3    According to the Indictment, the last supposedly unlawful transfer of money into
4  an account controlled by Standridge occurred in July 2002.  [*Id.* at 31]  There are no
5  allegations in the Indictment that *any* premiums or other proceeds of the crimes charged
6  was ever deposited into the BOA account seized here.

7    The money seized from Standridge's BOA account came from checks issued by the
8  Treasurer of the United States and the State of Arizona.  [Standridge Decl. at ¶ 8-10]  The
9  checks were refunds for overpayments by Standridge on his 2003 and 2005 federal and
10  state tax returns.  [*Id.* at ¶ 6]  The checks were deposited into the BOA account in April
11  and May of 2007.  [*Id.* at ¶ 8-10]

12    These funds represent substantially all of Standridge's cash assets.  [*Id.* at ¶ 4]
13  Standridge had intended to use these funds for living expenses and legal fees in the related
14  criminal proceedings.  [*Id.*]  Trial in the criminal case is set for November 5, 2007.
15  [Order, Ex. B]

16  **Procedural Posture**

17    The government seized the BOA account on May 29, 2007 as part of a nonjudicial
18  civil forfeiture proceeding.  On June 26, 2007, Standridge submitted a claim to the seizing
19  agency.  [Ex. D]  The claim outlined Standridge's rights to the funds in the seized
20  account.  It also described the unlawful nature of the seizure.  The same day, counsel for
21  Standridge sent a letter to AUSA Mark Devereaux, attaching the claim and explaining the
22  unlawful nature of the seizure.  [Ex. E]  The letter asked for the return of the funds or the
23  immediate initiation of a judicial forfeiture action.   The government never provided

24

25    [2] The government set out, in detail, the assets of all of the defendants it claimed
26  were subject to forfeiture in the Indictment and First Bill of Particulars.  Standridge's
BOA account was not included.  Only *after* the money was seized, did the government
serve a Second Bill of Particulars with the BOA account identified.

1  Standridge with the formal notice of intent to forfeit required by 18 U.S.C. § 983.  Nor has

2  it ever filed a complaint against the seized property.

3      On July 12, 2007, the government acknowledged receipt of the claim and

4  announced its intention to "proceed with forfeiture of the seized assets in the pending

5  criminal case."  [Ex. C]  The government held the money for almost 45 days before

6  terminating the nonjudicial civil seizure proceeding.  It continues to hold the money.

7

8                                    **Argument**

9  **I.    SEIZURE OF SUBSTITUTE ASSETS FROM THE BOA ACCOUNT AND
        ITS CONTINUED RESTRAINT IS UNLAWFUL**

10     **A.    Statutory Framework**

11     The proceeds of the BOA account were seized in a civil administrative forfeiture

12  action pursuant to 18 U.S.C. § 981.  [Ex. F]  The civil forfeiture statutes require that

13  property subject to seizure be substantially connected to a violation of law.  18 U.S.C.

14  § 983(c)(3); *see, e.g., United States v. Contents of Four Bank Accounts Located in the*

15  *Bank of Dadeville*, 330 F. Supp. 2d 1299, 1304-05 (M.D. Ala. 2004) (government must

16  show that there is probable cause to believe that the "property *is itself* involved in, or is

17  traceable to property involved in a proscribed transaction" (emphasis added)).

18     On July 12, 2007, the government terminated the civil forfeiture proceeding,

19  electing to pursue forfeiture through the criminal case.  [Ex. C]  In a criminal forfeiture

20  action, the government may only restrain assets before trial if it obtains either a criminal

21  seizure warrant or criminal protective order.  21 U.S.C. § 853.[3]  It has obtained neither.

22     Only forfeitable property, as defined in 21 U.S.C. § 853(a), is subject to a criminal

23  seizure warrant or criminal protective order.  21 U.S.C. §§ 853(e) & (f); *United States v.*

24

25     [3] The civil seizure warrant claimed violations of 18 U.S.C. §§ 1341, 1343, 1956,
    and 1957.  18 U.S.C. § 982 governs criminal forfeitures arising out of allegations of these
26  violations.  21 U.S.C. § 853, in turn, governs "the forfeiture of property under [§ 982],
    including any seizure and disposition of the property and any related judicial or
    administrative proceeding."  18 U.S.C. § 982(b)(1).

1   *Ripinsky*, 20 F.3d 359, 361-62 (9th Cir. 1994) ("The government may also restrain

2   *forfeitable* assets prior to conviction if it appears that the defendant may otherwise transfer

3   or conceal those assets by the time of conviction" (emphasis added)).  Property is only

4   forfeitable when it is "constituting, or derived from, any proceeds the person obtained,

5   directly or indirectly, as the result of [a criminal violation]."  21 U.S.C. § 853(a).  "An

6   asset is either traceable to the offense or a substitute asset for funds involved in the

7   offense, but it cannot be both."  *United States v. Weiss*, 2005 WL 1126663 (M.D. Fla.

8   2005).

9

10          **B.      The Proceeds From the BOA Account are Substitute Assets and Cannot
           be Restrained.**

11          Standridge's tax refunds from tax years 2003 and 2005, deposited in 2007 into the

12   BOA account, are unconnected to the transfers of money that the Indictment claims, as to

13   Standridge, last occurred in July 2002.  There is no allegation in the Indictment suggesting

14   otherwise and it simply could not be the case that refunds from income earned in 2003 and

15   2005 could in any way be connected to conduct that ended at the latest in July 2002.

16   Because the property here (tax refunds for tax years 2003 and 2005) is unconnected to any

17   offense, it can only be a substitute asset, which is forfeitable, if at all, only after

18   conviction.

19          The law is clear that the government may not restrain substitute assets pretrial in a

20   civil or criminal forfeiture action.  S*ee United States v. $405,089.23 U.S. Currency*, 122

21   F.3d 1285, 1289 (9th Cir. 1997) ("the government must provide the district court with a

22   showing of probable cause for belief that a substantial connection exists between the

23   property to be forfeited and the criminal activity"); *United States v. Williams*, 2006 WL

24   1582152 (M.D. Fla.) (to obtain a seizure warrant, the government must have "probable

25   cause to believe that a substantial connection exists between the property sought to be

26   forfeited and the prohibited conduct . . .").  *United States v. Ripinsky*, 20 F.3d at 363

1   (9th Cir. 1994) (concluding that 21 U.S.C. § 853 "does not authorize the pretrial restraint

2   of substitute assets"); *United States v. Gotti*, 155 F.3d 144, 149 (2d Cir. 1998); *United*

3   *States v. Riley*, 78 F.3d 367, 371 (8th Cir.1996*); In re Assets of Martin*, 1 F.3d 1351, 1359

4   (3d Cir.1993).  Because the tax refunds here are substitute assets, they are not subject to

5   pretrial restraint and should be returned to Dr. Standridge.

6

7   **II.    THE GOVERNMENT'S FAILURE TO OBTAIN A CRIMINAL SEIZURE
        OR CRIMINAL RESTRAINING ORDER IS FATAL**

8          Under no circumstances is the government permitted to restrain substitute assets

9   pretrial.  However, even if the assets at issue here were considered to be connected to an

10   offense charged in the Indictment (which they are not), the government still would not be

11   authorized to hold the funds because the government has ignored the statutory

12   requirements for doing so.

13          Once it abandoned the civil proceeding and elected to proceed with the forfeiture in

14   the criminal case, the government was required to comply with the *criminal* forfeiture

15   laws in order to retain possession of the assets.  *See* 18 U.S.C. § 983(a)(1)(A)(iii) (if the

16   government, within 60 days of the seizure, obtains an indictment containing an allegation

17   that the seized funds are subject to forfeiture it may "terminate the nonjudicial civil

18   forfeiture proceeding and take the steps necessary to preserve its right to maintain custody

19   of the property as provided in the applicable criminal forfeiture statute").

20          The government has not taken "the steps necessary to preserve its right to maintain

21   custody of the property as provided in the applicable criminal forfeiture statute," which is

22   21 U.S.C. § 856.  *See* Stefan D. Cassella,[4] *The Civil Asset Forfeiture Reform Act of 2000:*

23   *Expanded Government Forfeiture Authority and Strict Deadlines Imposed on All Parties*,

24   27 J. Legis. 97, 132 (2001) ("once the administrative forfeiture is terminated, the

25

26          [4] As the article notes, Mr. Cassella was, at that time, "[t]he Assistant Chief of the
       Asset Forfeiture and Money Laundering Section of the U.S. Department of Justice and
       was the principal drafter of the Department of Justice's asset forfeiture proposals."

government has no legal basis for holding the property unless it re-seizes the property with a criminal seizure warrant under § 853(f), or obtains a criminal restraining order under § 853(e)").

The government terminated the civil forfeiture proceeding on July 12, 2007, but has not obtained either a criminal restraining order or a criminal seizure warrant. The government had 60 days to take the necessary steps to hold the money, but did not do so. It is now too late. 18 U.S.C. § 983(a)(1)(A)(iii). Having failed to follow the procedure mandated by statute, the government has no authority to continue to restrain the money and must return it.

## III.    RULE 41(G) REQUIRES THAT THE GOVERNMENT RETURN STANDRIDGE'S MONEY

The standards by which courts evaluate a motion for the return of seized property differs depending upon the posture of the case. A Rule 41(g) motion for the return of seized property, where, as here, an indictment is pending is an "interlocutory matter in the course of a criminal proceeding prosecuted by the United States against [Standridge] as a defendant." *See Lord v. Kelley*, 223 F. Supp. 684, 687 (D.C. Mass. 1963). But where no indictment is pending, such motions are decided pursuant to the court's equitable jurisdiction. *Id.* at 689 ("before he has been indicted, an aggrieved person may invoke the jurisdiction of a district court under some circumstances . . . [s]uch non-statutory jurisdiction must be exercised subject to equitable principles").

The Court need not rely on its equitable jurisdiction here, and instead should grant the motion if it determines (as it should) that the government has unlawfully seized and restrained the proceeds of Standridge's BOA account. Nevertheless, as described below, even if the Court were to apply traditional equitable principles to Standridge's request, it would see that the equities here favor Standridge, further warranting return of the funds.

. . .

1           In deciding a motion for the return of property in the absence of an indictment,

2   courts consider four factors: (1) "whether the motion for return of property accurately

3   alleges that government agents . . . displayed a callous disregard for the rights of the

4   plaintiff;" (2) "whether the plaintiff has an individual interest in and need for the material

5   whose return he seeks;" (3) "whether the plaintiff would be irreparably harmed by denial

6   of the return of the property;" and (4) whether the plaintiff has an adequate remedy at law

7   for the redress of his grievance." *Richey v. Smith*, 515 F.2d 1239 (5th Cir. 1975); *United*

8   *States v. Ramsden*, 2 F.3d 322, 324-25 (9th Cir. 1993).

9           1.   <u>Callous Disregard for Standridge's Constitutional Rights</u>.  The government's

10   seizure of substitute assets, which are assets that are not lawfully restrained pretrial,

11   exhibited a callous disregard for Standridge's due process rights.  Even after being

12   informed that the money in the accounts could not be restrained, the government

13   continued to hold the funds.  It also continued to hold the funds after terminating the

14   nonjudicial proceeding.  *See e.g. Mason v. Pullman*, 402 F. Supp. at 980-81 (finding

15   callous disregard where the IRS continued to posses property belonging to a taxpayer

16   even after learning that it no longer had the permission of the taxpayer to do so and

17   therefore continued possession of the property was unlawful).

18           2.   <u>Individual Interest In and Need for the Property</u>.  The funds in the account,

19   in their entirety, belong to Standridge.   The government has seized nearly all of

20   Standridge's cash assets.  He had planned to use these assets both for living expenses and

21   to pay for his defense of the criminal action.  [Standridge Decl. at ¶ 4]  Standridge has a

22   substantial need for the property seized by the government.

23           3.   <u>Irreparable Harm</u>.  Standridge's criminal trial is set for trial on November 5,

24   2007.   [Order, Ex. B]   Meanwhile, nearly all of Standridge's cash assets have been

25   restrained, making it difficult for him to defend himself.  [Standridge Decl. at ¶¶ 4-5]

26   . . .

1       If convicted of the crimes charged in the Indictment, Standridge could face up to

2   100 years imprisonment and a fine of up to $1.25 million in this case, characterized by the

3   government as involving a "massive worker's compensation insurance fraud."  [Ex. G]

4   To mount an adequate defense in a case of this complexity, Standridge needs immediate

5   access to substantial funds.  A procedure that may provide for a finding that the funds

6   were unlawfully seized only *after* a trial on the merits of the criminal action, cannot repair

7   the damage caused by Standridge's inability to fund a defense in that criminal action.  The

8   harm here, therefore, is irreparable.  That harm continues every day that the funds are

9   restrained.

10       4.   <u>No Adequate Legal Remedy</u>.   Upon termination of the administrative

11   proceeding, the only pretrial remedy available to Standridge to challenge the seizure is a

12   motion pursuant to Rule 41(g).  In light of all of these factors, equity favors a return of the

13   seized money.[5]

14   **IV.   STANDRIDGE IS ENTITLED TO A HEARING ON AN EXPEDITED BASIS**

15       Rule 41(g) provides for the return of property illegally seized.   Standridge is

16   entitled to a hearing on this issue.  *United States v. Ledesma*, 499 F.2d 36, 39 (9th Cir.

17   1974) (in a challenge to an unlawful search brought under Rule 41(e), a hearing is

18   required "if the moving papers are sufficiently definite, specific, detailed, and

19   nonconjectural to enable the court to conclude that contested issues of fact . . . are in

20   question."); *United States v. Poe*, 462 F.2d 195 (5th Cir. 1972) (same)**.**

21       This Court may consider this motion on an expedited basis pursuant to its authority

22   under Local Rule 7.2.  This Court should order a shortened briefing schedule and hold a

23   hearing promptly.  Without this, Standridge will be irreparably harmed *before* any hearing

24   is held on the seizure and continued restraint.

25   

26       [5] We assume, but have not been able to verify, that the Magistrate Judge in the Middle District of Florida complied with Rule 41(i) and forwarded all required papers to the Clerk of the Court for the District of Arizona.

**Conclusion**

The initial seizure of this money and its continued restraint is unlawful.  The assets are unconnected to any crime.  They are tax refunds from the United States government and the State of Arizona for years after the Indictment claims that Standridge received any unlawful money transfers.  The government has also failed to comply with the procedures necessary to continue holding the funds from the BOA account.

The equities of the situation, although unnecessary for this Court to consider, also favor Standridge.  In seizing this account, the government has restrained substantially all of Standridge's cash assets.  This threatens his ability to meet his living expenses and adequately fund his defense.  Standridge has no other pretrial remedy to challenge this seizure.

The gravity of the situation and the injustice that is threatened should Standridge fail to obtain access to these funds demands a prompt hearing.  This Court should consider this motion on an expedited basis.  It should further order the return of the money unlawfully seized by the government.

Respectfully submitted this 31st day of July, 2007.

**PERKINS COIE BROWN & BAIN P.A.**


By:   s/ Jordan Green
          Jordan Green
          Lee Stein
          Kevin B. Wein
          Attorneys for Dr. Richard E. Standridge

1

**CERTIFICATE OF SERVICE**

2          I hereby certify that on July 31, 2007, I served the attached document by U.S. mail

3    and e-mail on the following persons:

4          Mark B. Devereaux
           Assistant United States Attorney
5          300 North Hogan Street, Room 700
           Jacksonville, Florida 32202
6          E-mail:  mark.devereaux@usdoj.gov

7          Bonnie A. Glober
           Assistant United States Attorney
8          300 North Hogan Street, Room 700
           Jacksonville, Florida 32202
9          E-mail:  bonnie.glober@usdoj.gov

10
                                        ___s/ Delana Keehner_____
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26